

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| GENE M. WHITEHEAD, | ) | No. ED102415 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Hon. Nancy L. Schneider |
| | ) | |
| Respondent. | ) | FILED: February 2, 2016 |

## Introduction

Appellant Gene Whitehead ("Whitehead") appeals from the judgment of the motion court denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing. Whitehead pleaded guilty to one count of first-degree robbery and three counts of second-degree robbery and was sentenced to a total of 12 years' imprisonment. Whitehead's amended motion sought to set aside his guilty plea to first-degree robbery. On appeal, Whitehead contends the motion court erred in denying his Rule 24.035 motion without an evidentiary hearing because (1) plea counsel was ineffective for failing to advise Whitehead of a possible lesser-included offense of second-degree robbery; and (2) plea counsel was ineffective for pressuring Whitehead to plead guilty.

Because the record demonstrates that Whitehead understood the nature of the charges against him, the available defenses, and the relevant circumstances of his plea, the record conclusively refutes Whitehead's claim that his guilty plea was involuntary or unknowing due to

plea counsel's failure to advise him of the possibility of the lesser-included offense of second-degree robbery. Further, Whitehead's testimony at the plea hearing and sentencing hearing specifically, directly, and conclusively refutes his claim that his guilty plea was involuntary as a result of plea counsel's alleged pressure and coercion. Accordingly, we affirm the judgment of the motion court.

## Factual and Procedural History

Whitehead was arrested and charged with robbing four banks. Whitehead was charged with one count of first-degree robbery for allegedly robbing a U.S. Bank in September of 2010. Whitehead retained plea counsel to represent him. On October 1, 2012, Whitehead pleaded guilty to one count of first-degree robbery and three counts of second-degree robbery. Whitehead did not plead guilty pursuant to a plea agreement.

Prior to pleading guilty, Whitehead signed a plea petition which was presented to the trial court at the plea hearing. The plea petition stated that Whitehead had not been coerced into pleading guilty, that he had adequate time to discuss the charges with plea counsel, that he knew he did not have to plead guilty and could instead go to trial, and that he alone decided to plead guilty.

At the plea hearing, the trial court had the following exchange with Whitehead:

Trial Court: Has your attorney explained each of these charges to you and discussed any possible defenses that might be available to you?
Whitehead: Yes, ma'am.
Trial Court: Other than plea negotiations, which I understand you have not come to an agreement, what I want to know, has anybody, including your own attorney, promised you anything to get you to plead guilty?
Whitehead: No, ma'am.
Trial Court: Has anyone threatened you to plead guilty?
Whitehead: No, ma'am.

2

The trial court then proceeded to ask Whitehead a series of questions to ensure that he understood the consequences of his guilty plea, including the various constitutional rights he was giving up by pleading guilty. First, Whitehead affirmed that he understood he had "the right to plead not guilty to all of these charges and be entitled to a public jury trial." Whitehead then acknowledged he understood that if he went to trial, he would enjoy the presumption of innocence; the State would have the burden of proving his guilty beyond a reasonable doubt; his attorney would have the right to call witnesses and cross-examine the State's witnesses; and he would be allowed to decide whether or not to testify. The following exchange then occurred:

> Trial Court: Do you understand if you plead guilty ... you give up your Constitutional rights and there will be no further trial of any kind?
>
> Whitehead: Yes, ma'am.
>
> Trial Court: Do you understand if I accept your plea of guilty the Court will impose punishment upon you?
>
> Whitehead: Yes, ma'am.
>
> Trial Court: Knowing that, do you wish to plead guilty to each of these in Counts One through Four?
>
> Whitehead: Yes, ma'am.

The State proceeded to state the elements of each charged offense and the range of punishment for each. With respect to the charge of first-degree robbery, the State recited that on or about September 14, 2010, in St. Charles County, Whitehead "forcibly stole cash owned by U.S. Bank and in the course thereof ... threatened with the immediate use of a dangerous instrument against a bank teller." The trial court asked Whitehead whether he understood the elements of each offense to which he was pleading guilty. Whitehead stated that he did. Whitehead also confirmed that he understood the range of punishment for each offense, understood that he was pleading guilty without a plea agreement, and understood that he could not withdraw his guilty plea is he was not satisfied with the outcome of the case. Whitehead

then pleaded guilty to the first-degree robbery charge in the following exchange with the trial court:

Trial Court: With that understanding, sir, do you still wish to plead guilty to the new charges today?
Whitehead: Yes, I do.
Trial Court: Are you guilty of committing each offense?
Whitehead: Yes, ma'am.
Trial Court: With respect to Count One, that is robbery at the U.S. Bank, did you commit that offense, sir?
Whitehead: Yes, ma'am.

...

Trial Court: And on that date did you forcibly steal cash owned by U.S. Bank and in the course of committing that robbery, did you threaten the immediate use of a dangerous instrument against the bank teller?
Whitehead: Yes, ma'am.

The trial court subsequently inquired further into the factual circumstances surrounding the first-degree robbery charge, particularly the note Whitehead gave to the bank teller:

Trial Court: Was there a note that you used on Count One on September 14, [2010], with respect to the Class A felony of robbery in the second—first degree?
Whitehead: Yes.
Trial Court: What did that note say?
Whitehead: I don't know exactly but it said something to the effect of please, you know, be calm, I have a weapon and give me the money in various denominations, I think.
Trial Court: So you do specifically admit the threat, the immediate use of a dangerous instrument contained in that note?
Whitehead: Yes, ma'am.
Trial Court: Did you communicate that note to the bank teller?
Whitehead: I gave it to her, yes, ma'am.
...
Trial Court: As a result of that threat, did you obtain cash from U.S. Bank?
Whitehead: Yes, ma'am.

The trial court accepted Whitehead's guilty plea and found him guilty beyond a reasonable doubt of committing each of the charged offenses. The trial court deferred sentencing and ordered a Sentencing Assessment Report ("SAR").

4

Whitehead appeared before the trial court for sentencing on January 23, 2013. The trial court sentenced Whitehead to a total of twelve years' imprisonment. The trial court also questioned Whitehead about plea counsel's performance in the following exchange:

Trial Court: I want to know if you have any complaint to make against your attorney?
Whitehead: No, ma'am.
Trial Court: Did he do everything you asked him to do for you?
Whitehead: Yes.
Trial Court: Did he do anything you asked him not to do or that you disagreed with in any way?
Whitehead: No, ma'am.

The trial court found that Whitehead understood his post-conviction rights and had not received ineffective assistance of counsel.

Whitehead subsequently filed a *pro se* Rule 24.035 motion for post-conviction relief alleging ineffective assistance of plea counsel. Post-conviction counsel was appointed and filed an amended motion alleging that plea counsel was ineffective (1) "for advising [Whitehead] to plead guilty without investigating and informing [Whitehead] of a possible lesser-included offense;" and (2) for pressuring Whitehead to plead guilty and telling Whitehead that he had no other option but to plead guilty.

The amended motion alleged that plea counsel was ineffective for advising Whitehead to plead guilty without informing him of a possible lesser-included offense "based on the evidence that [Whitehead] did not have a weapon during the alleged robbery and the jury could have found that Movant did not use or threaten to use any force during the robbery of the U.S. Bank." Whitehead argued that, based on the defense's proposed evidence, Whitehead would have been entitled to submit a proposed instruction for second-degree robbery at trial, as opposed to the charged crime of first-degree robbery. In support of his request for an evidentiary hearing, Whitehead claimed he would testify that he did not have a weapon or dangerous instrument

5

when he robbed the bank. More importantly, Whitehead claimed he would also testify that when he approached the bank teller, she never looked at the note, and that "the police reports" would show that the bank teller stated that she did not read the note and was not aware of any threat of a weapon.[1] Finally, Whitehead asserted that he would testify that plea counsel told him that he had no defense to any of the charges against him, and never informed him of the possible lesser-included offense.

Whitehead further alleged in the amended motion that plea counsel was ineffective for pressuring Whitehead to plead guilty because plea counsel told Whitehead that he should not go to trial, that he had no other option but to plead guilty, and that he would lose at trial because of the witnesses' statements in the police reports and the proposed evidence. Additionally, Whitehead alleged that plea counsel did not meet with him sufficiently enough for Whitehead to make a decision to plead guilty or go to trial, and that plea counsel never wanted to take his case to trial.

The motion court entered its findings of fact, conclusions of law, and judgment denying Whitehead's request for an evidentiary hearing as well as his amended motion, concluding that "the files and records of the case conclusively shows [sic] that [Whitehead] is entitled to no relief."

With respect to Whitehead's first claim of ineffective assistance, the motion court noted that the "problem" with Whitehead's argument was that first-degree robbery "does not require that the defendant actually be armed with a deadly weapon [or] a dangerous instrument." The motion court observed that during the guilty plea hearing, Whitehead "specifically testified under oath that he not only forcibly stole the money, but that he threatened immediate use of a

---

[1] The police reports referenced by Whitehead in both his amended motion and his appellate brief were not in the record before the motion court. The police reports are similarly not in the record on appeal; Whitehead's motion to supplement the record on appeal with said police reports was denied by this Court.

dangerous instrument against the bank teller." The motion court also found that Whitehead indicated to the trial court "that [plea counsel] had discussed all possible defenses with him and that no one had promised him anything or threatened him to plead guilty." Finally, the motion court noted that even after sentencing, Whitehead testified that he had no complaints about plea counsel and that plea counsel had done everything requested of him. Based on the foregoing, the motion court concluded that Whitehead's first claim of ineffective assistance was "without merit" and denied without an evidentiary hearing.

With respect to Whitehead's second claim of ineffective assistance, the motion court concluded that "[t]here is absolutely nothing wrong with [plea counsel] giving the defendant a candid assessment of the strength of this case." The motion court noted that, given the evidence and Whitehead's admission to the police, "any successful defense on the facts would have been exceedingly difficult." As a result, the motion court reasoned, "it appears that [plea counsel] gave sound advice." The motion court additionally noted that at the guilty plea proceeding, Whitehead was clear that no one promised him anything or threatened him in order to get convince him to plead guilty, and that he indicated he wished to waive his rights to a jury trial and enter a plea of guilty. As a result, the motion court found that Whitehead's guilty plea was freely, knowingly, and voluntarily entered. This appeal follows.

### Points on Appeal

Whitehead raises two points on appeal, each contending that the motion court clearly erred in denying his Rule 24.035 motion without an evidentiary hearing because he alleged facts not conclusively refuted by the record which would entitle him to relief on his ineffective assistance of counsel claim. First, Whitehead avers he alleged facts not refuted by the record showing that plea counsel was ineffective for failing to advise Whitehead of a possible lesser-

7

included offense of second-degree robbery, because the evidence showed that Whitehead did not use or threaten to use any force during his alleged robbery of the bank in question. Whitehead claims that if plea counsel had informed him he could proceed to trial and submit such a lesser-included offense for jury consideration, he would not have pleaded guilty and would have instead proceeded to trial. Second, Whitehead contends he alleged facts not refuted by the record showing that plea counsel was ineffective for telling Whitehead he had no other option but to plead guilty. Whitehead maintains that if he knew he had the option to go to trial, he would not have pleaded guilty but would have instead proceeded to trial.

## Standard of Review

Appellate review of the denial of a Rule 24.035 motion is limited to a determination of whether the motion court's findings, conclusions, and judgment are clearly erroneous. Wooldridge v. State, 239 S.W.3d 151, 153-54 (Mo. App. E.D. 2007). The motion court's findings and conclusions are presumptively correct and will be overturned only when this court, after reviewing the entire record, is left with a "definite and firm impression that a mistake has been made." Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010). After a guilty plea, our review is limited to a determination of whether the movant's plea was knowing and voluntary. Loudermilk v. State, 973 S.W.2d 551, 553 (Mo. App. E.D. 1998).

To be entitled to an evidentiary hearing on a post-conviction relief claim, a movant must (1) allege facts, not conclusions, that, if true, would warrant relief; (2) the facts alleged must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to the movant. Barnett v. State, 103 S.W.3d 765, 769 (Mo. banc 2003). An evidentiary hearing is not required if the files and records of the case conclusively show that the movant is entitled to no relief. Id. Where a movant alleges ineffective assistance

8

of counsel following a guilty plea, "[i]f an examination of the guilty plea proceedings directly refute that movant's plea was involuntary, movant is not entitled to an evidentiary hearing." Cain v. State, 859 S.W.2d 715, 717 (Mo. App. E.D. 1993).

## Discussion

In order to prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was prejudiced thereby. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). There is a strong presumption that counsel's performance was reasonable and effective. Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). To overcome this presumption, Whitehead must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Id.

When a claim of ineffective assistance of counsel follows a guilty plea, the claim of ineffective assistance is "immaterial except to the extent it impinges on the voluntariness and knowledge with which a [movant] pled guilty." Cain, 859 S.W.2d at 717. As a result, in order to prevail on an ineffective assistance of counsel claim following a guilty plea, a movant "must establish a serious dereliction of duty that materially affected his substantial rights and further show that his guilty plea was not an intelligent or knowing act." Evans v. State, 921 S.W.2d 162, 164 (Mo. App. W.D. 1996). Prejudice exists if the movant can show that, but for counsel's ineffective assistance, he would have not pleaded guilty and instead would have insisted upon going to trial. May v. State, 309 S.W.3d 303, 306 (Mo. App. E.D. 2010).

9

## I.   Point One – Lesser Included Offense

Whitehead contends that plea counsel was ineffective for failing to advise him of a possible lesser-included offense of second-degree robbery with respect to his first-degree robbery charge. Whitehead argues that because there was evidence that he did not use or threaten to use any force during his alleged robbery of U.S. Bank, he would have been entitled to submit a proposed instruction for second-degree robbery at trial in the event the case proceeded to trial. Specifically, Whitehead maintains that the police reports indicate that the bank teller never read the note he handed her, meaning she was not aware of any threat of a weapon.[2] In spite of the alleged availability of a lesser-included offense, Whitehead claims that plea counsel never informed him of such an option and told him that he had no defense to any of the charges against him, rendering his guilty plea involuntary. We are not persuaded.

A claim of ineffective assistance of counsel following a guilty plea is irrelevant except to the extent that it infringes upon the voluntariness and knowledge with which the guilty plea was made. Bequette v. State, 161 S.W.3d 905, 906 (Mo. App. E.D. 2005). A guilty plea must be a voluntary expression of the defendant's choice and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act. Davis v. State, 435 S.W.3d 113, 116 (Mo. App. E.D. 2014). As explained, where a movant alleges ineffective assistance of counsel following a guilty plea, "[i]f an examination of the guilty plea

---

[2] The police reports referenced by Whitehead, as mentioned, are not in the record on appeal before this Court. Regardless, the question of whether Whitehead would have been entitled to a jury instruction for second-degree robbery at trial is immaterial to our analysis. Instead, the sole question before us is whether the record refutes Whitehead's claim that plea counsel never informed him of the possibility of such a lesser-included offense, rendering his subsequent guilty plea involuntary and unknowing.

10

proceedings directly refute that movant's plea was involuntary, movant is not entitled to an evidentiary hearing." Cain, 859 S.W.2d at 717.

At the outset of Whitehead's plea hearing, the trial court had the following exchange with Whitehead regarding his understanding of the charges and plea counsel's discussion of those charges with him:

Trial Court:    Has your attorney explained each of these charges to you and discussed any possible defenses that might be available to you?
Whitehead:    Yes, ma'am.

Before Whitehead pleaded guilty, the State recited the elements of each offense with which Whitehead was charged. With respect to the charge of first-degree robbery, the State recited that on or about September 14, 2010, in St. Charles County, Whitehead "forcibly stole cash owned by U.S. Bank and in the course thereof ... threatened with the immediate use of a dangerous instrument against a bank teller." The trial court asked Whitehead whether he understood the elements of each offense to which he was pleading guilty. Whitehead stated that he did. Whitehead then pleaded guilty to the first-degree robbery charge, specifically admitting that he committed each element of the crime.

This Court has recently stated that, while counsel may advise a defendant to plead guilty based on the circumstances in a given case, "counsel still has the basic duty to discuss the circumstances and possible consequences of entering a plea, including possible defenses to the offense charged, in order to ensure that the defendant makes an informed and intelligent decision about waiving the right to trial." Wiggins v. State, 2015 WL 1915324, at *2 (Mo. App. E.D. Apr. 28, 2015). In Wiggins, the defendant, who pleaded guilty to second-degree murder, filed a motion for post-conviction relief alleging his attorney was ineffective for failing to advise him of the possibility of proceeding to trial on a theory that he was guilty of the lesser-included offense

11

of voluntary manslaughter. After the motion court denied the claim without an evidentiary hearing, we remanded for an evidentiary hearing. Because Wiggins is procedurally similar to the present case, Whitehead cites Wiggins in support of his position. This reliance on Wiggins, however, is misplaced.

Instead, we find the principles articulated in another recent case, Muhammad v. State, 367 S.W.3d 659 (Mo. App. E.D. 2012), to be controlling. In Muhammad, the defendant pleaded guilty to second-degree murder and filed a motion for post-conviction relief alleging that his attorney was ineffective for failing to inform him that he could assert self-defense at trial, and for failing to inform him that he could have been convicted of a lesser-included offense. The motion court denied Muhammad's motion without an evidentiary hearing, and this Court affirmed the motion court's judgment.

Central to our holding in Muhammad was the fact that Muhammad "testified before the plea court that defense counsel fully explained to him the nature of the charges and the elements of those charges," and "specifically stated that defense counsel had also explained any possible defenses." Id. at 662. Specifically, Muhammad had the following discussion with the trial court during the plea hearing:

| Court: | Has your attorney fully explained the nature of the charges pending against you? |
| Muhammad: | Yes, sir. |
| Court: | Has she explained the elements that make up the crime and any possible defenses you might have? |
| Muhammad: | Yes, sir. |

Id. at 661. As a result of Muhammad's responses before the trial court, we held that "the record before us does not support the conclusion that Muhammad was unaware of the basic principles of self-defense or the concept of lesser-included offenses" at the time of his guilty plea. Id. at 663. On the contrary, we held that "the record clearly demonstrates that Muhammad understood

12

the nature of the charges, the available defenses, and was sufficiently aware of the circumstances of his plea." Id. We additionally noted that "we are not persuaded that the possibility of being convicted of a lesser offense to second-degree murder is beyond the realm of knowledge of a lay person." Id. Such defenses, we held, do not require specialized legal knowledge, "but are commonly known legal principles." Id.

Whitehead's case is factually and legally indistinguishable from Muhammad. Here, like the trial court in Muhammad, the trial court specifically asked Whitehead whether plea counsel "explained each of these charges to you and discussed any possible defenses that might be available." Whitehead confirmed that plea counsel had done so. Further, as in Muhammad, Whitehead's testimony clearly indicated that he understood the nature of the charges against him, the elements of those charges, and the consequences of his guilty plea.

We recognize that our holding in Wiggins distinguished our holding in Muhammad. However, that distinction is inapposite here. In Wiggins, we held that the rationale of Muhammad did not apply precisely *because* "the plea court did not ask Movant specifically whether his plea counsel had explained any available or known defenses to him, or if plea counsel had fully advised Movant as to all aspects of the case." Wiggins, 2015 WL 1915324, at *4. We additionally noted that the legal concept underlying the potential lesser-included offense in Wiggins—sudden passion arising from adequate cause—"is not as evident to a non-lawyer." Id.

Neither of the reasons we articulated for distinguishing Wiggins from Muhammad is applicable here. Instead, here we are presented with a nearly identical factual situation as in Muhammad. Given the facts before us, we see no reason to deviate from our clear holding in Muhammad. In fact, our reasoning in Muhammad regarding a layperson's understanding of

13

lesser-included offenses is of even greater relevance here. Whitehead was charged with, confirmed he understood the elements of, and pleaded guilty to, three additional counts of second-degree robbery in this case—the very lesser-included offense about which he claims plea counsel should have advised him.

Because the record demonstrates that Whitehead understood the nature of the charges against him, the available defenses, and was sufficiently aware of the relevant circumstances of his plea, the record conclusively refutes Whitehead's claim that his guilty plea was involuntary or unknowing due to plea counsel's failure to advise him of the possibility of the lesser-included offense of second-degree robbery. Point One is denied.

## II.    Point Two – Advice to Plead Guilty

Whitehead contends that plea counsel was ineffective for telling Whitehead that his case should not go to trial and that he had no other option but to plead guilty. Whitehead claims that plea counsel told him he would lose at trial based on the evidence, and that plea counsel did not spend enough time meeting with him. As a result, Whitehead maintains that plea counsel pressured him to plead guilty, rendering his guilty plea involuntary.

A claim of ineffective assistance of counsel following a guilty plea is irrelevant except to the extent that it infringes upon the voluntariness and knowledge with which the guilty plea was made. Bequette, 161 S.W.3d at 906. A guilty plea must be a voluntary expression of the defendant's choice and a knowing and intelligent act. Davis, 435 S.W.3d at 116. "A plea of guilty is not made voluntarily if the defendant is misled, or is induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded." Id. Conversely, a guilty plea is "knowingly entered if the movant had

14

sufficient awareness of the relevant circumstances and likely consequences of the act."
Muhammad, 367 S.W.3d at 661.

An evidentiary hearing is not required if the files and records of the case conclusively show that the movant is entitled to no relief. Barnett, 103 S.W.3d at 769. "To justify the denial of an evidentiary hearing on an ineffective assistance of counsel claim, the record must be specific enough to refute conclusively the movant's allegation[s]." Mitchell v. State, 439 S.W.3d 820, 822 (Mo. App. E.D. 2014).

Here, the record directly and conclusively refutes Whitehead's allegations of ineffective assistance. Whitehead first alleged that plea counsel coerced him to plead guilty by advising him to plead guilty rather than go to trial based on the police reports and written statements. Such advice was not improper or coercive. The fact that plea counsel gave Whitehead an honest opinion of the strength of his case simply does not constitute coercion. It is precisely "the duty of counsel to advise his client of the strength of the State's case." Pittman v. State, 331 S.W.3d 361, 365 (Mo. App. W.D. 2011). "The fact that such advice was that the State's case was strong, or that [the defendant's] conviction was likely, does not vitiate the plea of guilty." Id. Nor does the fact that a defendant entered a guilty plea based on the advice of counsel mean that the plea was involuntary or coerced. Id.

Whitehead additionally alleged that plea counsel told him he had "no other option" but to plead guilty; that plea counsel pressured him to plead guilty because plea counsel never wanted to take the case to trial; and that plea counsel did not meet with him often enough before the guilty plea decision was made. These allegations are directly refuted by the record. At the guilty plea hearing, Whitehead testified that no one, including plea counsel, had promised him anything or threatened him in order to get him to plead guilty. Whitehead also repeatedly assured the trial

15

court that he understood he did not have to plead guilty, understood he was entitled to proceed to trial, and understood that his guilty plea would waive that right along with several other rights. Whitehead assured the trial court that he still wished to plead guilty and admitted that he committed each of the elements of all four charged crimes. Whitehead also signed a plea petition indicating that had not been coerced into pleading guilty, that he had adequate time to discuss the charges with plea counsel, and that he knew he did not have to plead guilty and could instead go to trial. Finally, Whitehead testified at the sentencing hearing that he had no complaints about plea counsel; that plea counsel did everything Whitehead asked him to do; and that plea counsel did not do anything Whitehead "disagreed with in any way."

Whitehead's testimony at the plea hearing and sentencing hearing specifically, directly, and conclusively refutes his claim that his guilty plea was involuntary as a result of plea counsel's alleged pressure and coercion. Instead, the record reflects that Whitehead's guilty plea was a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and consequences of the plea. Point Two is denied.

## Conclusion

The judgment of the motion court denying Whitehead's Rule 24.035 motion for post-conviction relief without an evidentiary hearing is affirmed.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa Van Amburg, C. J., concurs.

16